All right, Mr. Chaplain Kramer, we'll hear from you first. Thank you, Your Honor. May it please the Court. Good morning. My name is William Chapman Kramer. I am here on behalf of the appellant, Stephon Verges. There are two issues that are raised in this case, both of which are related to Mr. Verges's base offense level being enhanced as a result of a finding that he was previously convicted of Subdivision IV of Missouri's Unlawful Use of a Weapon Statute and that that offense qualifies as a crime of violence. I intend to primarily focus on the first issue raised in the brief, that despite circuit precedent, this offense should not so qualify. And we recognized from the outset, Your Honors, that this is not new territory, that since pooling was decided in 2009, on multiple occasions, this Court has faced challenges to Subdivision IV's designation as a crime of violence. However, in 2025, the United States Supreme Court decided the case of Delegati, and we submit that that case has now cast a doubt on Pulliam and that this panel is no longer bound by that precedent. And there's really several aspects to Delegati that are important in this regard. And I think the foremost one is what the Court and Delegati is actually doing. Because if you look at the case, while at first blush it may not seem like there's a whole lot there on this issue, they really are engaging with the phrase, another person, in a way that they have not done in previous cases. They are not looking at that phrase in regards to whether or not it modifies another term in the definition, or whether or not it in some way impacts the mens rea. Rather, the Court is directly addressing an argument that a State offense cannot qualify as a crime of violence simply because it does not meet the requirements of another phrase on its own. And in answering that question, the Court does some important things. First off, they make clear that there is a specific agreed upon meaning of that phrase. And then they take that meaning and apply it to the State offense at issue, thereby confirming that yes, on its own, that a State offense must meet those parameters that they have laid out in order to qualify as a crime of violence. The other important aspect of Delegati is by its very nature of not being a plurality opinion. And I think this takes on particular significance within this Court's history of this issue. As in United States v. Larry, the Court had a very similar argument to ours that they were faced with. And that claim was rejected on the basis that Borden was a plurality opinion, and that Justice Thomas' concurring opinion did not rely upon the phrase against the person of another. Well, in Delegati, which is written by Justice Thomas, in footnote 5, he directly addresses this concern, stating that while there may still be disagreement in regards to the mens rea aspect of it, there is no disagreement in that the phrase identifies the object of the force. And this is significant because it represents the Supreme Court coming to some common ground on this issue, which has not always been the case. I guess the concern is whether you agree with it or not, haven't our cases, Pulliam, as the earliest, said that there is an object of the force? I don't think that they necessarily have. And here's why. I mean, I can understand... I mean, there's that one line from Pulliam that's regularly quoted that has been disputed over the years. Sure. You know the line I mean. It goes without saying. Right. When you display a weapon... Displaying an operational weapon before another in an angry and threatening manner qualifies as a threatened use of force against another person. Correct. And Pulliam... If that were correct, wouldn't that comply with Delegati? I don't think it necessarily does. And here's why. It's because... Well, for a couple of reasons. I mean, Pulliam is short. Delegati is short on this issue. I don't think necessarily the shortness of it matters, as far as that goes. But I do think that the concepts that the Supreme Court is doing in Delegati are significantly different from what was in existence before. And I don't think you even necessarily have to go back 16 years to Pulliam to reach that conclusion. If you go back to Borden, just five years ago, there are vastly different views that are presented in the plurality and the dissenting opinions on regards to what this phrase means. And so I think that while there... I don't know if I want to say there that it's unreasonable that Pulliam maybe didn't have that idea in mind of being an object. I think that there is doubt that is casted upon it enough to say that because this is a substantial step that the Supreme Court is taking in regards to coming to this common ground. And then I think the second part to it is the next thing that the Court does with that Delegati is that after they provide this common meaning on it, they take the state offense at its issue and they actually apply that meaning to it. And so in Pulliam, maybe they did, but I don't think that there's anything from the language where you can clearly say that they used this meaning that the Supreme Court has provided to the phrase and then applied that same analysis to the statute. And the only word that is changed in Pulliam from the statute really is the inclusion of the word before. And I don't think necessarily... Before what? Before. You know, the Missouri offense requires... Another? Right. Rather than in the presence of. And I don't think that the word before is enough to necessarily say that they for sure used this same analysis that's laid out in Delegati. And I think it's also important, you know, how they do that because, you know, he has this footnote, but then the body of the opinion expands upon that agreement. And they say that it requires that another person be the conscious object of the force, specifies the required object of the force, involves taking a specific action against a specific person, and then applies that and provides examples of a parent who lets their child drink bleach and that's targeting a particular individual. That's taking a specific action against a specific person. It's a deliberate effort to make the child suffer the bleach's poisonous effects. And so really it's both of those aspects. It's the agreed upon meaning and it's the necessity and process by which they apply that meaning that we think casts doubt upon Pulliam and that this panel is no longer bound. And really that's the first kind of part to this issue. I think the first question is whether or not this panel is bound. And if this panel is not bound, then the panels still have to go forward and actually analyze Subdivision 4 to determine whether it does or does not qualify as a crime of violence. And when you look at Subdivision 4 underneath particularly Delegati, I don't think you can come to the conclusion that it does qualify. And that's whether you look at the plain meaning of the statute or whether you look at Missouri cases interpreting them. And admittedly, not many of these cases are new throughout the history of this decision since Pulliam. The only one that really would be new would be the CS versus Missouri State Highway Patrol. And we don't in any way suggest that that case controls the issue at all. But I do think it has some relevance to the issue. Because what the Missouri Supreme Court also did in 2025 was that they made some commentary on this provision and what the purpose of that provision was. And the language that they used in regards to explaining it is that it was really regulating conduct that was more concerned with risk that endangers others or creates a dangerous situation. And that, I would argue, is more akin to this juxtaposition that is noted in Delegati in regards to specific action against a specific person versus abstract risk to community peace and order. And when you look at the plain meaning of the statute, it doesn't require much. It's a simple, straightforward statute. It's the display of a weapon in the presence of others in an angry or threatening manner. And the only part of that statute that requires another person is in the presence. But it's plain that it cares not what that person's role is. It could be a target, a confederate, an uninvolved observer. You just need somebody else around. And I think it's for sure, there are circumstances where somebody violates this statute that qualify as a crime of violence. But the ultimate question is, does it always require that another person be the conscious object of the force? And I think when you look at the plain terms of the statute, it does not always require that. And that although these cases may predate it, that when you look at them in the light of Delegati, that it also is clear that Missouri cases interpreting it also would support that another person doesn't have to be the conscious object. I would point to State v. Gein, which makes clear that the in the presence element can be satisfied by somebody who undoubtedly is not the conscious object of the force. And other cases have made clear that there are other provisions that would cover these situations where somebody is your specific target. That would be like an assault. Well, assault has an additional element that you do not have to prove under Missouri law. And that's putting somebody in apprehension of immediate physical injury. And I see that I'm out of time, Your Honor. Based on both issues raised in the brief, we would ask that you vacate the sentence and remand for resentencing. All right, thank you for your argument. Mr. Hayes, we'll hear from you. Good morning, Your Honors, and may it please the Court, Michael Hayes for the United States. There has never been any doubt or confusion as far as the government is aware that crimes of violence, including those defined under the Force Clause of the Guidelines, are crimes against people. It's in the very language of the Force Clause, the use of force or attempted use of force or threatened use of force against the person of another. And as Chief Judge Colleton notes, this Court in Pulliam said that, observed that it goes without saying that the Missouri Exhibiting Statute qualifies as a crime of violence under the Force Clause of the Guidelines. And yet, even though perhaps it went without saying in 2009, this Court has had to address the question numerous times since then, roughly a dozen times this question has been presented to the Eighth Circuit. Each time this Court has found again and again that Missouri's Exhibiting Statute is a crime of violence under the Guidelines. In Hudson and prior, 2017 and 2019, this Court noted that there had been no pertinent developments in Missouri law to undermine its decision in Pulliam. There still have been no pertinent developments in Missouri law to undermine Pulliam. In fact, Mr. Vergis cites cases all the way back to the 90s. One Court of Appeals case, the most recent from 1998, in support of their position. This Court has addressed these concerns, these questions, numerous times, has always found that the Exhibiting Statute in Missouri qualifies as a crime of violence. Mr. Vergis now comes forward and says that, well, this Delegati opinion from the Supreme Court, that that should change the equation or that it does change the equation, the analysis. The government submits that Delegati changes nothing. Delegati only reiterated what, frankly, everyone knew previously. That crimes of violence, as I said before, are crimes against people. Delegati clarified that the Fourth Clause requires that a person be the conscious object of the force, but again, that's only what this Court has concluded previously in finding that the Exhibiting Statute qualifies as a crime of violence. Following the Borden case, the 2021 Supreme Court case, this Court addressed the question of the mental state required under the Missouri Exhibiting Statute. And because the Exhibiting Statute requires an offender act knowingly, this Court found that, again, it satisfied the Fourth Clause. This argument on the heels of Delegati, I think, is a repackaging of arguments previously made. The, quote, conscious object language from Delegati actually is from the Borden case. So really nothing has changed. I'd like to make a couple points about the arguments submitted by Mr. Vergis. In their brief, they indicate that Delegati now requires a targeting of a specific person, but it does not. That is not what Delegati says. In Delegati, there was an unusual hypothetical about a mother allowing her child to drink bleach with the intent to harm her child, to allow her child to die. And the Supreme Court in Delegati said that would be an example that would satisfy the Fourth Clause because there's a targeting of a specific person with force. So that was a sufficient set of facts to satisfy the Fourth Clause, but not a necessary set of facts. So targeting an individual with force, yes, certainly that's sufficient. That satisfies the Fourth Clause. But that is not what the Fourth Clause requires. Justice Thomas, in Delegati, while again reiterating this conscious object language, that a person must be the conscious object, Justice Thomas nevertheless said the following, that against another language, at most, at most, requires that another person be the conscious object of the offender's force. But later, Justice Thomas said that the against another language specifies the required object of the force, another person rather than say an animal, and possibly also the mens rea with which the object must be targeted, in parentheses, knowingly or intentionally rather than negligently or recklessly. Here we have a statute which criminalizes the knowing threat of force against another person and that still, per the very terms of Delegati, what Justice Thomas told us, that satisfies the Fourth Clause. Very briefly, Your Honor, on the argument that this Missouri statute applies to ex-convicts and that there are exhibitions of guns that aren't directed specifically at a particular person, but that just create a risky environment. Well, Your Honor, Mr. Vergas can cite no case in Missouri where a conviction has been obtained under that fact pattern where someone is just waving a gun and they create an abstract risk. Always there's a victim in these crimes. The conscious object in an exhibiting case in Missouri requires a victim. And so, while it also... What about the case where there was a shooting in the car? Yes, Your Honor. Somebody in the car? In that case, Your Honor, I think that was the Johnson case. I could be mistaken, but I think it's the Johnson case. There was a person present, I guess. Yes, Your Honor. In that case, the shooting arose from a dispute, an argument, that the offender had with a girlfriend or an ex-girlfriend. He was on the doorstep of her house. She was inside the house. They had this argument, and he turned around and shot into her vehicle. She was not in the vehicle. So, in that case, yes, we have a vehicle, an inanimate object, which is the object of the use of force. But the female who was present, who he had just been yelling at, the offender, she also is the object of the threatened use of force. So, by turning around and shooting into the car, that offender is communicating to that woman who he's yelling at, this is what I'm capable of doing, this is what I'm willing to do, I can take matters into my own hands. That communicates to that woman a threat. And so, that's why he was convicted under the UUW exhibiting statute and not under, say, a property damage statute or the UUW subdivision involving shooting into a motor vehicle. She was the conscious object of that man's anger. His dispute with her is what prompted him to shoot into that vehicle. He wasn't angry at the vehicle, he was angry at her. And that's why, in that case, the statute was satisfied. That's why, in that case, that was a crime of violence under the federal guidelines. The concern is, suppose she hadn't been there. Suppose she was in the house, or suppose she was across town and he was just shooting at her car, but there happened to be a pedestrian down the street who was unrelated to the couple. Understood, Your Honor. Would that qualify as a violation? No, that would not qualify as a violation under the statute. Unless, if the offender was aware of that other person's presence, then it could, but ultimately, that's not the kind of case that's going to be prosecuted in the state of Missouri or that ever has been successfully prosecuted in the state of Missouri. Mr. Verges can cite no case where a conviction was obtained under this subdivision, under those facts. And the Supreme Court in Gonzalez v. Duenas-Alvarez, a 2007 case, the Supreme Court in that case was examining in an immigration, in a deportation case, whether Mr. Duenas-Alvarez had been convicted of a quote, theft offense, as theft, as a theft offense is defined under federal law. And they examined different ways that the California statute could be prosecuted in different ways a person theoretically might be convicted under the California statute. And what the Supreme Court said in 2007 was that, quote, to find that a state law creates a crime outside the generic definition of a listed crime in a federal statute requires a realistic probability, not a theoretical possibility that the state would apply its statute to conduct falling outside the generic definition. And so I think the hypothetical you've presented Chief Judge, is theoretically possible, but practically speaking, very improbable. I would suggest almost zero probability that that, under those facts, first, that the crime would be reported. Second, that a police officer or deputy would book the defendant or the offender under that statute. Third, that it would get through a judge and a jury and survive on appeal. Any one of those steps, I think, is exceedingly unlikely put together. You've addressed the hypothetical. Thank you. Thank you, Your Honor. Thank you for your argument. We ask that the court affirm. Would you care to make a rebuttal? I'd appreciate it if I could. You may. Well, how much, did he use his time? I used my time. I don't have to. I didn't use my time. Very well. Then we'll submit the case as argued and thank you both for your arguments. Thank you. And counsel are excused. Thank you. That concludes the